UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUNWU GONG,<br><br>    Plaintiff,<br><br>-against-<br><br>STUART M. SARNOFF, O'MELVENY & MYERS LLP, CARL M. STANTON, CITY OF NEW YORK, OFFICER JOHN DOE 1, OFFICER JOHN DOE 2, OFFICER JOHN DOE 3, OFFICER JANE DOE,<br><br>    Defendants. | Civil Action No. 1:23-cv-00343-LJL<br><br>Hon. Lewis J. Liman |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' APPLICATION FOR REASONABLE ATTORNEYS' FEES AND COSTS AWARDED AS RULE 11 SANCTIONS PURSUANT TO THE COURT'S AUGUST 22, 2023 ORDER**

September 5, 2023

William J. Sushon
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

*Attorneys for O'Melveny & Myers LLP and Stuart Sarnoff*

## TABLE OF CONTENTS

                                                                                                                 **Page**

INTRODUCTION ............................................................................................................................ 1

DISCUSSION .................................................................................................................................. 2

      I.      THE SECOND CIRCUIT APPLIES THE "PRESUMPTIVELY REASONABLE FEE" STANDARD TO CALCULATE ATTORNEYS' FEES. ................................................................................................................. 2

            A.    The "Presumptively Reasonable" Hourly Rate Is Determined According to the Market Rates of Similarly Situated Lawyers. ................ 3

            B.    The Award Amount is Based on Time Actually Spent.............................. 3

            C.    The Court May Consider Other Factors in Determining a "Reasonable" Rate. ...................................................................................... 4

            D.    District Courts Routinely Award Costs. ..................................................... 4

      II.     CALCULATION OF REASONABLE ATTORNEYS FEES AND COSTS ....................................................................................................................... 5

            A.    Defendants' Attorneys' Fees Are Reasonable. ......................................... 5

                   1.     Hourly Rates ................................................................................... 5

                   2.     Hours Expended ............................................................................. 8

                   3.     Additional Factors Support the Reasonableness of Defendants' Attorneys' Fees............................................................ 8

            B.    Defendants Costs Are Reasonable. ........................................................... 9

            C.    Total Attorneys' Fees and Costs Calculation........................................... 10

      III.    MATERIAL TO BE STRUCK FROM THE ORIGINAL COMPLAINT AND AMENDED COMPLAINT. ................................................................... 12

CONCLUSION............................................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*,
   407 F.3d 65 (2d Cir. 2005) .................................................................................................. 4

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elec.*,
   522 F.3d 182 (2d Cir. 2008) ..................................................................................... 3, 4, 5, 9

*Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*,
   34 F.3d 1148 (2d Cir. 1994) ................................................................................................ 3

*Farbotko v. Clinton Co.*,
   433 F.3d 204 (2d Cir. 2005) ................................................................................................ 4

*Fisher v. SD Prot. Inc.*,
   948 F.3d 593 (2d Cir. 2020) ................................................................................................ 4

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998) ............................................................................................ 3, 7

*Hancock v. I.C. System, Inc.*,
   592 F. Supp. 3d 250 (S.D.N.Y. 2022) ........................................................................ 3, 5, 10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................................ 2, 3, 8

*Huber v. Marine Midland Bank*,
   51 F.3d 5 (2d Cir. 1995) .................................................................................................... 11

*Malletier v. Artex Creative Int'l Corp.*,
   687 F. Supp. 2d 347 (S.D.N.Y. 2010) ................................................................................. 5

*McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*,
   450 F.3d 91 (2d Cir. 2006) .................................................................................................. 3

*Reiter v. MTA N.Y. City Transit Auth.*,
   457 F.3d 224 (2d Cir. 2006) ................................................................................................ 3

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017) ............................................................................................ 3, 7

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962 (RCC), 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ............................ 3, 5

*United States ex rel. Carranza v. Guaranteed Rate, Inc.*,
   No. 117CV637MADDJS, 2021 WL 494696 (N.D.N.Y. Feb. 10, 2021) ............................. 3

## INTRODUCTION

As directed in the Court's August 22, 2023 order,[1] defendants OMM and Stuart Sarnoff submit this memorandum of law (i) requesting $242,807.86, the amount of their attorneys' fees and costs incurred to defend themselves in this action and (ii) identifying the allegations against them in the Complaint and Amended Complaint that should be struck. In the August 22 Order, the Court awarded OMM and Mr. Sarnoff Rule 11 sanctions because (i) "the Complaint was filed not to redress any injury [to] Plaintiff . . . or to obtain judicial relief, but to harass [] Defendants because of their representation of a client in litigation against [Miles] Kwok and to deter others from doing the same"; and (ii) "Plaintiff's FARA claim . . . lacked any chance of success and was objectively frivolous." (Order at 23, 30). The Court therefore awarded OMM and Mr. Sarnoff (i) their reasonable attorneys' fees and costs for defending this action (but not for bringing the instant motion under Rule 11) payable jointly and severally by Plaintiff and his counsel, Richard Freeth and Yongbing Zhang (*id.* at 35), (ii) a $2,500 fine payable to the Court by each of Messrs. Freeth and Zhang (*id.* at 36); (iii) an order striking the allegations against OMM and Mr. Sarnoff from the Complaint and the Amended Complaint (*id.* at 38); and (iv) an order directing Plaintiff and Messrs. Freeth and Zhang "to file a copy of [the Order] in all future actions opened by them for a period of one year" (*id.*).

The fees and expenses OMM and Mr. Sarnoff seek are reasonable given the threat to their reputations the Complaint posed, the number and complexity of its claims, and the market rate

---

[1] As used in this memorandum, (i) "August 22 Order" or "Order" means the Court's Opinion and Order on the Sanctions Motion [ECF No. 72]; (ii) "OMM" means defendant O'Melveny & Myers LLP, (iii) "Complaint" means Plaintiff's original complaint [ECF No. 2], (iv) "Amended Complaint" means Plaintiff's amended complaint [ECF No. 43], (v) "Sushon Declaration" or "Sushon Decl." mean the Declaration of William J. Sushon in Support of Defendants' Application for Reasonable Attorneys' Fees and Costs Awarded as Rule 11 Sanctions, filed contemporaneously herewith. Unless otherwise specified, all emphasis is added and all quotations and citations are omitted.

for large-firm lawyers in Manhattan. Based on Plaintiff's argument at the sanctions motion hearing, OMM and Mr. Sarnoff anticipate that Plaintiff and his counsel will argue that they nevertheless cannot afford to pay such sanctions. OMM and Mr. Sarnoff respectfully submit that this is not the case; high-profile social-media posts indicate that one of Plaintiff's lawyers, Mr. Zhang, owns a Lamborghini, the value of which likely exceeds the amount of OMM and Mr. Sarnoff's reasonable attorneys' fees and expenses. Furthermore, filings made in the Kwok criminal case indicate that Mr. Zhang also offered to guaranty co-defendant Yvette Wang's $5,000,000 bond, which certainly suggests that Mr. Zhang is a person of means sufficient to satisfy the sanctions award.

Given the Court's conclusion that this action was filed to intimidate perceived adversaries of Miles Kwok and the reasonable supposition that the lawyers did not provide their services for free, OMM and Mr. Sarnoff respectfully submit that, if the sanctioned parties were to cry poverty, discovery into the sanctioned parties' financial wherewithal and sources of funding for this litigation would be appropriate.

## DISCUSSION

**I.   THE SECOND CIRCUIT APPLIES THE "PRESUMPTIVELY REASONABLE FEE" STANDARD TO CALCULATE ATTORNEYS' FEES.**

District courts have broad discretion in determining the reasonableness of attorneys' fees and costs.[2] In deciding the amount of fees to award, courts in the Second Circuit apply the "presumptively reasonable fee" standard under which the district court must consider various "case-specific variables" relevant to the attorneys' fees' reasonableness, including the attorneys'

---

[2] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (noting that there is "no precise rule or formula" for making determinations about the reasonability of attorneys' fees awards and that the court "necessarily has discretion in making this equitable judgment").

2

hourly rates, whether the time spent was "reasonably expended," and additional factors indicating "what a reasonable, paying client would be willing to pay."[3]

### A. The "Presumptively Reasonable" Hourly Rate Is Determined According to the Market Rates of Similarly Situated Lawyers.

To identify a "presumptively reasonable" hourly rate, district courts look to "the hourly rates employed in the district in which the reviewing court sits."[4] Specifically, district courts use "the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[5] These rates should be "current rather than historic hourly rates,"[6] and the "best evidence" of the current market rate is the "attorney's customary billing rate for fee-paying clients."[7]

### B. The Award Amount is Based on Time Actually Spent.

Courts award fees for hours "reasonably expended."[8] Thus, "the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials."[9] To meet this requirement, the fee applicant need not submit "actual contemporaneous time records, but instead [may] submit[]a typed listing of their hours from their computer records."[10]

---

[3] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elec.,* 522 F.3d 182, 184, 186, 190 (2d Cir. 2008).

[4] *Restivo v. Hessemann,* 846 F.3d 547, 590 (2d Cir. 2017).

[5] *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998).

[6] *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006).

[7] *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 CIV 0962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006); *see also Hancock v. I.C. System, Inc.,* 592 F. Supp. 3d 250, 255 (S.D.N.Y. 2022) ("[T]he range of rates that . . . counsel actually charges their clients . . . is obviously strong evidence of what the market will bear.").

[8] *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983).

[9] *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006).

[10] *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994); *see also United States ex rel. Carranza v. Guaranteed Rate, Inc.*, No. 117CV637MADDJS, 2021 WL 494696, at *9 (N.D.N.Y. Feb. 10,

### C. The Court May Consider Other Factors in Determining a "Reasonable" Rate.

In determining a reasonable hourly rate, the Court should consider not only the rates approved in other cases in the District, but also any other evidence offered by the parties.[11] To determine "what a reasonable, paying client would be willing to pay," courts weigh additional factors, including:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, . . . and other returns (such as reputation, *etc.*) that an attorney might expect from the representation.[12]

District courts consider these factors through the lens of a "paying client [who] wishes to spend the minimum necessary to litigate the case effectively."[13] The Court may also rely on its own familiarity with prevailing rates in the District.[14]

### D. District Courts Routinely Award Costs.

"An award of costs normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients."[15] Expenses related to

---

2021) (applicant "sufficiently met her burden of providing contemporaneous billing records" by providing a spreadsheet "specifying, for each attorney, the date, the hours expended, and the nature of the work done").

[11] *Farbotko v. Clinton Cnty. of New York,* 433 F.3d 204, 208–09 (2d Cir. 2005).

[12] *Arbor Hill,* 522 F.3d at 184.

[13] *Id.* at 190.

[14] *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.,* 407 F.3d 65, 81–82 (2d Cir. 2005).

[15] *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

court filing fees, service, shipping, and legal research "are the types of routine costs typically awarded."[16]

## II.   CALCULATION OF REASONABLE ATTORNEYS' FEES AND COSTS

### A.   Defendants' Attorneys' Fees Are Reasonable.

The attorneys' fees Defendants seek meet the Second Circuit's "presumptively reasonable fee" standard.[17] As detailed below, the hourly rate, hours expended, and additional factors related to timing, complexity, and burden all demonstrate that the requested fee amount is reasonable.

#### 1.   Hourly Rates

OMM's "customary billing rate[s]" are "the best evidence" of market rates,[18] and these rates are in line with those OMM's peers charge. (*See* Sushon Decl. Exs. 7–12). OMM is a global law firm that advises industry-leading companies, law firms, and financial institutions on complex legal matters. (*See* Sushon Decl. Ex. 6). Its award-winning litigation team[19] is renowned for reducing clients' exposure and risk, disposing of cases early, and developing inventive strategies that lead to groundbreaking results. OMM's lead counsel on this matter, William J. Sushon, is a partner in the firm's Securities Litigation practice group and has been practicing for nearly 30 years. (*See* Sushon Decl. Ex. 1). Mr. Sushon has been recommended by *Legal 500* for dispute resolution services in multiple areas, including securities litigation, shareholder litigation, and financial services litigation. (*See id.*). His standard hourly billing rate has been $1,555 since January 1, 2023. (*See* Sushon Decl. at ¶ 3).

---

[16] *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 365 (S.D.N.Y. 2010); *see also Hancock*, 592 F. Supp. 3d at 258 (holding filing, service, and shipping fees are "routinely recoverable as litigation costs").

[17] *Arbor Hill*, 522 F.3d at 190.

[18] *Stock Exchs. Options Trading,* 2006 WL 3498590 at *9.

[19] *See* Sushon Decl. Ex. 6.

The other members of the OMM team are each highly qualified litigators:

- Laura S. Aronsson is a litigation counsel at OMM. She joined the firm after earning her J.D. from Notre Dame Law School, completing a clerkship with the Honorable David W. McKeague on the U.S. Court of Appeals for the Sixth Circuit, and working as an associate at Cahill Gordon & Reindel LLP and Holwell Shuster & Goldberg LLP. Ms. Aronsson has practiced for more than four years at OMM, where she regularly advises clients in civil litigation matters. (*See* Sushon Decl. Ex. 2.) Her standard hourly billing rate has been $1,155 since January 1, 2023. (*See* Sushon Decl. at ¶ 3).

- Aisling Murray was an associate at OMM. Ms. Murray joined the firm after earning her L.L.B. from Trinity College Dublin and her L.L.M. from Harvard Law School, completing a clerkship with the High Court of Ireland, and working as an associate at Paul Hastings LLP. Ms. Murray practiced for three years at OMM, where she regularly advised clients in restructuring and bankruptcy litigation matters. (*See* Sushon Decl. Ex. 3.) Her standard hourly billing rate was $1,055 as of January 1, 2023. (*See* Sushon Decl. at ¶ 3).

- Eli Grossman is an associate at OMM. Mr. Grossman joined the firm after earning his J.D. from New York University School of Law. Mr. Grossman has practiced for more than four years at OMM, where he regularly advises clients in civil litigation matters. (*See* Sushon Decl. Ex. 4.) His standard hourly billing rate has been $1,055 since January 1, 2023. (*See* Sushon Decl. at ¶ 3).

- Makenzie Russo is a litigation associate at OMM. She joined the firm after earning her J.D. from Fordham University School of Law. Ms. Russo has practiced for more than one year at OMM, where she regularly advises clients in civil litigation matters. (*See* Sushon Decl. Ex. 5.) Her standard hourly billing rate has been $790 since January 1, 2023. (*See* Sushon Decl. at ¶ 3).

Based on public filings by peer firms that disclose their standard 2023 rates, OMM's peer firms charge hourly rates in the range of $1,360 to $2,230 for partners, $1,300 to $1,855 for counsel, and $625 to $1,475 for associates. (Sushon Decl. Exs. 7–12). While the sanctioned parties may argue that these rates are inflated because they are for specialized bankruptcy counsel, they are the only readily-available billing rates from public sources and nevertheless provide a solid basis for comparing OMM's rates. Significantly, the rates of OMM and Mr. Sarnoff's lawyers in this case are in the lower half of the peer-firm ranges: $1,555 for a partner (13% less than the peer-range midpoint of $1,795), $1,155 for counsel (26% less than the peer-range mid-point of $1,577.50), and between $790 to $1,055 for associates. (*See* pp. 5–6, *supra*.).

In fact, courts routinely approve OMM's standard rates as reasonable. (*See* Sushon Decl. Ex. 13 at 6; Ex. 14 at 2). Defendants thus request nothing more than "the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[20]

While the sanctioned parties may argue that the requested rates are above the average rate for attorneys practicing in the state of New York, such an argument should be unavailing because—as noted above—the relevant inquiry is whether the requested rates fall within the range of *similarly situated* lawyers "*in the district* in which the reviewing court sits[.]"[21] Nor would there be any merit to a suggestion that OMM and Mr. Sarnoff should have sought less expensive counsel from a smaller firm to defend this action. Given the reputational risk they faced due to Plaintiff's defamatory, ill-motivated allegations that OMM and Mr. Sarnoff are agents of the CCP who support genocide and other atrocities, (*see* Complaint ¶¶ 31, 44–47; Amended Complaint ¶¶ 41, 57–60), it could only be expected that OMM and Mr. Sarnoff would turn to top-tier lawyers to defend themselves, and in this case their own team, with whom they have significant experience and in whom they have time-tested confidence. And plaintiff sought more than $10 million in damages—a figure that further justifies hiring a large law firm that customarily defends cases of that size. (Complaint at 25; Amended Complaint at 28). Because OMM's rates are commensurate with rates charged by similarly situated global law firms in the Southern District of New York, those rates are "presumptively reasonable."[22]

---

[20] *Gierlinger*, 160 F.3d at 882.

[21] *Restivo*, 846 F.3d at 590.

[22] *Id*.

2.      *Hours Expended*

This Fee Application seeks attorneys' fees related to defending this action, *i.e.*, litigating Defendants' motions to dismiss Plaintiffs' Complaint and Amended Complaint (the "Motions to Dismiss"), including (but not limited to) preparing the opening and reply briefs in support of each motion.  The number of hours expended on these tasks, as detailed in the spreadsheets provided, is reasonable, particularly because Defendants seek reimbursement only for the fees charged by the core team members—Mr. Sushon, one counsel, and three associates—who worked on the motions.  (Sushon Decl. at ¶ 3; Sushon Decl. Ex. 24).  These hours include time spent conducting legal research, drafting, conferring with the clients and team members, and corresponding with Plaintiffs' counsel.  OMM and Mr. Sarnoff faced four distinct claims, each with different elements, in a Complaint spanning 179 paragraphs and 25 pages, and an Amended Complaint that included 193 paragraphs and 29 pages.  That distinguishes this case from those Messrs. Freeth and Zhang brought against other Kwok adversaries, which included only claims under FARA—and not the additional civil rights claims at issue here.[23]  In light of this, the time expended is not "excessive, redundant, or otherwise unnecessary," the hours expended are reasonable, and they should be fully compensated.[24]

3.      *Additional Factors Support the Reasonableness of Defendants' Attorneys' Fees.*

Additional factors the Second Circuit has identified likewise support Defendants' fee calculation.  This includes the increased burden on Defendants and their counsel due to

---

[23] *See* First Am. Compl., *An v. Despins*, Case No. 1:22-cv-10062 (S.D.N.Y.), ECF No. 8; Second Am. Compl., *An v. Shan*, Case No. 1:22-cv-10060 (S.D.N.Y.), ECF No. 10; Compl., *Wyatt v. Univ. of Maryland*, Case No. 1:23-cv-00742 (D. Md.), ECF No. 1.

[24] *See Hensley*, 461 U.S. at 434.

8

Plaintiffs' counsel's sanctionable conduct.[25]  Because of the harassing and frivolous nature of Plaintiff's complaints, Defendants moved as quickly as feasible to seek dismissal—twice. Plaintiff served his Complaint on March 2, 2023 [ECF No. 18], and Defendants moved to dismiss on March 23, 2023 [ECF No. 20].  Plaintiff filed the Amended Complaint on April 26, 2023, and Defendants moved to dismiss on May 8, 2023 [ECF No. 47].  In other words, within a span of only 67 days, Defendants prepared and filed two motions to dismiss.  Working in such a condensed timeframe made the case more burdensome for Defendants.

In addition, the need to summarize this case's complex background to expose Plaintiff's harassing motive—including years of litigation against Kwok in New York state court and Bankruptcy Court in the United States District Court for the District of Connecticut—made litigating this case especially onerous.  (ECF No. 20 at 3–8; ECF No. 47 at 3–8).  This required a painstaking assessment of years of litigation history, careful analysis of the three other, similar lawsuits brought against other individuals perceived to be Kwok's adversaries, and a detailed account of agitation staged to harass and intimidate Defendants—which apparently served as the launching pad for Plaintiff's false allegations and frivolous claims in this case.  These background facts were necessary, as they assisted the Court in concluding that "the Complaint was filed not to redress any injury [to] Plaintiff . . . or to obtain judicial relief, but to harass [] Defendants because of their representation of a client in litigation against Kwok."  (Order at 30).

     **B.**    **Defendants Costs Are Reasonable.**

The costs OMM and Mr. Sarnoff incurred in this action total $11,911.65.  (Sushon Decl. Ex. 25).  Defendants only seek to recover 50% of these costs—a total of $5,955.86—even though the Order allows OMM and Mr. Sarnoff their costs for two motions to dismiss and

---

[25] *See Arbor Hill*, 522 F.3d at 184.

9

excludes only costs associated with the sanctions motion itself (which likely represents less than half of costs incurred). (*See* Sushon Decl. at ¶ 24). OMM and Mr. Sarnoff nevertheless are limiting their request to avoid any suggestion that they are overreaching in their application. The expenses sought are "routinely recoverable as litigation costs," and should be reimbursed in their full amount.[26]

### C. Total Attorneys' Fees and Costs Calculation.

Defendants' total attorneys' fees and costs of $242,807.86 is explained and substantiated in Mr. Sushon's declaration and the exhibits attached thereto. (*See* Sushon Decl. at ¶¶ 23–25; Sushon Decl. Exs. 24–25). The total reflects 178.4 attorney hours related to litigating the Motions to Dismiss, totaling $236,852.00 (Sushon Decl. Ex. 24); and $5,955.86 of costs (Sushon Decl. Ex. 25).

Given the argument Mr. Freeth presented at the hearing and oral argument on OMM and Mr. Sarnoff's sanctions motion, as well as the opposition to Trustee Despins' fee application in *An v. Despins* (Sushon Decl. Ex. 21), OMM and Mr. Sarnoff anticipate that the sanctioned parties will argue that they are unable to pay this amount, and that it should therefore be reduced. (Sushon Decl. Ex. 15 at 32:17-33:7). Any such argument would be meritless. Apart from any assets that Messrs. Gong and Freeth have, it is apparent that Mr. Zhang has substantial assets. According to social media posts dated March 16, 2023, Mr. Zhang received a Lamborghini from Kwok in March 2022. (Sushon Decl. Exs. 16–17). According to the Kelley Blue Book website, a Lamborghini Aventador sold for more than $500,000 when new, and is worth at least that much today. (Sushon Decl. Ex. 18). Lamborghini's other 2022 model car—the Huracan—sold new for between $215,000 and $333,000. (Sushon Decl. Ex. 19). Further evidence of Mr.

---

[26] See *Hancock*, 592 F. Supp. 3d at 258.

Zhang's financial health is that, in March of this year, he offered to be a surety in satisfaction of Yvette Wang's $5,000,000 bail conditions in her ongoing criminal prosecution. (Sushon Decl. Ex. 20 at 5). Though redacted on the public docket, Ms. Wang attached to her application "documents demonstrating [Mr. Zhang's] qualifications to serve as a co-signer." (*Id.*).

Furthermore, if Plaintiff himself were unable to pay an attorneys' fee award here, he likely would not have had sufficient assets to pay Messrs. Freeth and Zhang to represent him. This suggests that the sanctioned parties have access to additional resources from others, potentially including Kwok affiliates the Rule of Law Foundation, New Federal State of China, or others. In fact, Kwok has a history of offering to defray legal expenses his followers incur. For example, Kwok publicly declared that Himalaya Fund or Rule of Law Foundation would hire attorneys to help his followers contest Rule 2004 subpoenas they received in Kwok's personal bankruptcy proceedings. (*See* ECF 28-2 at 24 ("[Kwok] told viewers that, if they are 'stupid' and receive subpoenas, the Himalaya Global Alliance and Rule of Law [F]oundation would hire attorneys to help them contest the subpoenas")). Thus, if the sanctioned parties were to argue that the amount of any sanctions should be reduced due to inability to pay, OMM and Mr. Sarnoff would respectfully request that they be afforded discovery to determine whether the sanctioned parties "ha[d] a source or sources of funds that [were] available when needed to pursue vexatious and harassing litigation[.]"[27]

---

[27] *Huber v. Marine Midland Bank,* 51 F.3d 5, 9 (2d Cir. 1995) (finding that Plaintiff bore the burden of producing evidence of inability to pay court-imposed monetary sanctions and affirming district court's decision that Plaintiff's failure to pay constituted contempt where Plaintiff "ha[d] a source or sources of funds that [were] available when needed to pursue vexatious and harassing litigation").

11

### III. MATERIAL TO BE STRUCK FROM THE ORIGINAL COMPLAINT AND AMENDED COMPLAINT.

As the Court instructed (*see* Order at 38), Defendants also identify the following paragraphs containing material to be struck from the Complaint and Amended Complaint (in addition to the Defendants' names in the case captions):

| Original Complaint ¶ | Amended Complaint ¶ |
|---|---|
| 25 | 21 |
| 26 | 34 |
| 27 | 35 |
| 28 | 36 |
| 29 | 37 |
| 30 | 38 |
| 31 | 39 |
| 42 | 40 |
| 43 | 41 |
| 44 | 42 |
| 45 | 50 |
| 46 | 51 |
| 47 | 52 |
| 49 | 53 |
| 50 | 54 |
| 61 | 55 |
| 62 | 56 |
| 64 | 57 |
| 65 | 58 |
| 67 | 59 |
| 68 | 60 |
| 71 | 62 |
| 72 | 63 |
| 74 | 74 |
| 76 | 75 |
| 77 | 76 |
| 90 | 78 |
| 130(d) | 79 |
| 137(a) | 81 |
| 137(c)(i) | 82 |
| 138 | 85 |
| 139 | 86 |
| 140 | 88 |
| 141 | 90 |
| 142 | 91 |

12

| Original Complaint ¶ | Amended Complaint ¶ |
|---|---|
| 148 | 104 |
| Count VII Parentheses | 144(d) |
| Conclusion and Request for Relief (b) | 151(a) |
| - | 151(c)(i) |
| - | 152 |
| - | 153 |
| - | 154 |
| - | 155 |
| - | 156 |
| - | 162 |
| - | Count VII Parentheses |
| - | Conclusion and Request for Relief (b) |

OMM and Mr. Sarnoff have submitted as Exhibits 22 and 23 of the Sushon Declaration redacted copies of the Complaint and Amended Complaint indicating the specific material that should be struck.

In addition, Exhibit H to the Amended Complaint—which refers to OMM attorneys—should be struck. Based on Plaintiff's descriptions, Amended Complaint Exhibits I and J also ostensibly refer to OMM, and should thus be struck. (*See* Amended Complaint ¶ 56(b)-(c)). Plaintiff failed, however, to file those exhibits with his Amended Complaint. Defendants position, therefore, is that striking the entirety of Amended Complaint ¶ 56 should be sufficient to address (non-existent) Exhibits I and J.

## CONCLUSION

Defendants respectfully request that the Court (i) award Defendants their reasonable attorneys' fees and costs in the amount of $242,807.86; and (ii) strike the paragraphs identified in Part III above from Plaintiff's Original Complaint and Amended Complaint. In the event and to the extent that Plaintiff and his counsel argue inability to pay in opposing this application, and the Court determines that issue is relevant to its sanctions award, Defendants also respectfully request the opportunity to take discovery of this issue from Plaintiff Gong, Mr. Freeth and Mr. Zhang.

Dated: New York, New York
       September 5, 2023

O'MELVENY & MYERS LLP

By: _____
William J. Sushon
wsushon@omm.com
7 Times Square
New York, New York  10036-6537
Ph: +1 212 326 2000
Fx: +1 212 326 2061

*Attorneys for Defendants Stuart M. Sarnoff and O'Melveny & Myers LLP*