UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/15/2024
```

------------------------------------------------------------------X
                   :

JUNWU GONG,                 :
                 :

        Plaintiff,      :
                 :

                 :        23-cv-343 (LJL)

      -v-              :
                 :     MEMORANDUM AND

STUART M. SARNOFF, O'MELVENY & MYERS  :        ORDER
LLP, CARL M. STANTON, CITY OF NEW YORK,  :
OFFICER JOHN DOE 1, OFFICER JOHN DOE 2,  :
OFFICER JOHN DOE 3, OFFICER JANE DOE  :
                 :

        Defendants.     :
                 :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

On August 22, 2023, this Court granted the motion of Defendants Stuart M. Sarnoff ("Sarnoff") and O'Melveny & Myers LLP ("O'Melveny" and, together with Sarnoff, "Moving Defendants") for Rule 11 sanctions after finding that Plaintiff Junwu Gong ("Plaintiff") had asserted frivolous claims and initiated the action with an improper purpose.  Dkt. No. 72. Among other forms of relief, the Court ruled that Moving Defendants were entitled to an award of attorneys' fees and costs incurred by them in defending against the action (but not for bringing the Rule 11 motion) and to be paid by Plaintiff and his counsel; the Court directed Moving Defendants to file an application for fees and costs within fourteen days.  Dkt. No. 72 at 35, 39. Moving Defendants submitted such application and request in the amount of $235,812.50 in attorneys' fees and $5,955.86 in costs.  Dkt. No. 75.  For the following reasons, Moving Defendants' application for attorneys' fees is granted in part and denied in part.

## BACKGROUND

Familiarity with the Court's prior Opinion and Order granting in part and denying in part Moving Defendants' motion for sanctions, Dkt. No. 72, is presumed.

## I.      Allegations of the Amended Complaint

Plaintiff is a foreign-born, ethnically Chinese U.S. Permanent Resident who resides in Edgewater, New Jersey, and is actively involved in protesting the Chinese Communist Party ("CCP") of the People's Republic of China ("PRC").  Dkt. No. 43 ¶¶ 24, 46–47.  O'Melveny is an international law firm of which Moving Defendant Sarnoff is a partner.  *Id.* ¶ 53.  Plaintiff alleges O'Melveny is beholden to the CCP, and that O'Melveny and Sarnoff are acting as unregistered agents of the CCP in violation of the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 611(c)(1), Dkt. No. 43 ¶¶ 60, 76–78.  He further alleges that he has been subject to ongoing harassment by CCP agents, *id.* ¶ 70, and that O'Melveny and Sarnoff have contributed to the CCP's efforts to harass Plaintiff, *id.* ¶ 57.  He also alleges that O'Melveny and Sarnoff conspired to violate and did in fact violate Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments, enforceable through 42 U.S.C. §§ 1983 and 1985(3).  *Id.* ¶¶ 140–169.

In his amended complaint, Plaintiff alleges that on December 20, 2022, he was hit by an automobile driven by Carl M. Stanton (another named defendant in this action against whom the case was later dropped) while Plaintiff was peacefully protesting near Sarnoff's residence.  *Id.* ¶¶ 86, 110–111.  Plaintiff had been regularly attending protests near Sarnoff's residence and O'Melveny offices in New York due to Moving Defendants' alleged connections to the CCP; Plaintiff alleges that O'Melveny performs "extremely lucrative" work in the PCR, *id.* ¶ 56, and that Sarnoff, as a partner at O'Melveny, is "conspicuous[ly]" involved in the firm's China practice, *id.* ¶ 58.  After being struck by Stanton's vehicle, Plaintiff alleges that officers of the

New York City Police Department ("NYPD"), also named defendants, failed to file a police report and obstructed Plaintiff's efforts to get medical attention. *Id.* ¶¶ 122–123, 130–132.

Aside from Plaintiff's allegations of connections between Moving Defendants and the CCP, the amended complaint contains minimal allegations of Moving Defendants' conduct and no allegations connecting their conduct to state action. It does not allege that Sarnoff interacted in any way with protestors on December 20, 2022, or that the Moving Defendants were in any way connected to Stanton, the NYPD, or any other state actor with respect to the events of December 20, 2022. The amended complaint alleges only that the Moving Defendants are unregistered agents of the CCP in violation of FARA. *Id.* ¶¶ 60, 76–78. Plaintiff supports this claim with factual allegations that Sarnoff and O'Melveny have performed legal work for Chinese companies, *id.* ¶¶ 34–42, and that O'Melveny has offices in the PRC from which it conducts "lucrative" business with a "potentially significant impact on the country," *id.* ¶¶ 53, 56. Plaintiff brought, *inter alia*, claims under Sections 1983 and 1985(3) against all of the defendants, *id.* ¶¶ 140–169, and sought declaratory judgment to compel O'Melveny's and Sarnoff's registration as foreign agents under FARA, *id.* ¶¶ 187–193.

## II. Relevant Procedural History

On January 18, 2023, Plaintiff filed a complaint initiating this action. Dkt. No. 2. On March 23, 2023, Moving Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 19. In their memorandum of law in support of the motion, Moving Defendants argued that (1) Plaintiff failed to allege any conduct by Moving Defendants directed toward Plaintiff, Dkt. No. 20 at 1–2, and (2) that the FARA claim lacked merit because there is no private right of action under FARA, Plaintiff had not alleged any injury in connection with the conduct of Moving Defendants, and Plaintiff failed to allege facts showing that FARA registration was required, *id.* at 2–3.

On March 28, 2023, Moving Defendants filed a motion for sanctions pursuant to Rule 11 and a supporting memorandum of law and declaration.  Dkt. Nos. 26–28.  Moving Defendants withdrew the motion the following day because they had not complied with Rule 11(c)(2) requirement that the motion cannot be filed until after the nonmoving party has been given an opportunity to withdraw the offending claim or papers.  Dkt. No. 29.

On April 26, 2023, Plaintiff filed the amended complaint, which did not add any factual allegations with respect to the events of December 20, 2022.  Dkt. No. 43.  The amended complaint was identical to the original complaint in most respects except for the addition of new paragraphs quoting a Heritage Foundation report on the PRC's threat to the United States, citations to news articles discussing the arrests of two alleged PRC operatives in New York, *id.* ¶ 11, new allegations that Moving Defendants are part of a coordinated CCP effort to "destroy[] the life of Ho Wan Kwok (aka Miles Guo)," *id.* ¶ 55(f), and allegations that O'Melveny has represented entities that have tortured Chinese individuals in American courts, *id.* ¶¶ 34–36.

On July 17, 2023, the Court issued an Opinion and Order granting Moving Defendants' motion to dismiss the amended complaint against them with prejudice.  Dkt. No. 57.  The Court concluded that Plaintiff had failed to plead any facts to support a Section 1983 claim, *id.* at 13, a Section 1985(3) conspiracy claim, or standing for a FARA claim, *id.* at 20–21.  The Court retained jurisdiction to decide Defendants' Rule 11 motion.  *Id.* at 24.

On April 20, 2023, before the dismissal of the amended complaint, Moving Defendants refiled their Rule 11 motion for sanctions, along with the accompanying memorandum of law and declarations.  Dkt. Nos. 36–39.  On May 4, 2023, Plaintiff filed his memorandum in opposition, Dkt. No. 45, and on May 17, Moving Defendants filed their reply memorandum of

law.  Dkt. No. 51.  The Court held oral argument and an evidentiary hearing on the motion on

August 16, 2023.  *See* Aug. 16, 2023 Minute Entry.

On August 22, 2023 the Court granted in part and denied in part Moving Defendants'

motion for sanctions.  Dkt. No. 72.  The Court held that Moving Defendants had satisfied the

safe-harbor provision under Rule 11, *id.* at 17, that Plaintiff's FARA claim was frivolous, *id.* at

22, and that Plaintiff had initiated the action for improper purposes, *id.* at 28.  The Court found

an award of attorneys' fees and costs warranted for expenses incurred by Moving Defendants in

defending against the action, but not for bringing the sanctions motion under Rule 11.  *Id.* at 35;

*cf. Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) ("[W]hen awarded as Rule

11 sanctions, attorney's fees ordinarily will not include compensation for the entire case, but

only for expenses generated by the Rule violation itself."); *Unanue Casal v. Unanue Casal*, 132

F.R.D. 146, 151 (D.N.J. 1989), *aff'd*, 898 F.2d 839 (1st Cir. 1990) (Breyer, J.) ("Attorney's fees,

when awarded as Rule 11 sanctions, ordinarily include only compensation for expenses

generated by the Rule violation itself.").  As such, the Court directed the Moving Defendants to

file an application for fees and costs within fourteen days.  Dkt. No. 72 at 39.  Moving

Defendants did so on September 9, 2023, Dkt. Nos. 74–75, but the Court found the submitted

records insufficient to determine an appropriate award of attorneys' fees and gave Moving

Defendants leave to file evidence including specific descriptions of the work done for this case,

Dkt. No. 103.  On March 28, 2024, Defendants filed a declaration with an appended exhibit of

time records including detailed descriptions of work done.  Dkt. No. 104.

## DISCUSSION

Moving Defendants request $235,812.50 in attorneys' fees and $5,955.86 in costs.  Dkt.

No. 104 ¶¶ 4–5.  For Rule 11 violations, courts may impose a sanction against the offending

party including "an order directing payment . . . of part or all of the reasonable attorney's fees

and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).  "When a court determines that attorneys' fees and costs should be used as sanctions under Rule 11, the award should be based both on the total amount of reasonable attorneys' fees and costs attributable to the sanctioned party's misconduct and the amount needed to serve the deterrent purposes of Rule 11."  *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018); *see Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 124 (2d Cir. 1987).  The Court ordered that these costs and attorneys' fees are to be borne by Plaintiff and his counsel, Richard Freeth and Yongbing Zhang.  *See An v. Despins*, 2023 WL 4931832, at *8 (S.D.N.Y. Aug. 2, 2023) (concluding that sanctions should be imposed on plaintiff's counsel for "issue[s] over which counsel exercise[d] principal responsibility," such as "ensuring that the complaints filed met a minimum merit threshold and pled adequate facts to establish subject matter jurisdiction" (alterations in original) (quoting *United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 171 (2d Cir. 2003))).

As a general matter, the "starting point" and "lodestar" in analyzing whether claimed attorney's fees are appropriate is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended).  "That method . . . estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *Kirschner v. Zoning Bd. of Appeals of Inc. Vill. of Valley Stream*, 159 F.R.D. 391, 396 (E.D.N.Y. 1995); *see Millea*, 658 F.3d 154, 166 (2d Cir. 2011).  The party seeking the attorneys' fees "bears the burden of demonstrating that its requested hours and hourly rates are reasonable, and must provide a court with sufficient

6

information to assess the fee application." *Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 1242507, at *3 (S.D.N.Y. Mar. 21, 2024); *see, e.g., Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 898 F. Supp. 116, 121 (E.D.N.Y. 1995).  This approach is intended to "produce[] an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (emphasis in original); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]he determination of fees 'should not result in a second major litigation.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))).

## I.      Reasonable Hourly Rates

Moving Defendants seek attorneys' fees for five lawyers, each of whom is based in New York City and each of whom worked on the instant matter, at the following rates: (1) $1,555 per hour for William J. Sushon, a partner in the securities litigation practice group who has been practicing for twenty-eight years and was recommended by *Legal 500* for dispute resolution services in multiple areas, Dkt. Nos. 75 ¶ 3, 75-1; (2) $1,155 per hour for Laura Aronsson, counsel with broad complex commercial litigation experience, Dkt. Nos. 75 ¶ 3, 75-2; (3) $1,055 for Aisling Murray, an associate specializing in bankruptcy, insurance coverage, and class action litigation, Dkt. Nos. 75 ¶ 3, 75-3; (4) $1,055 for Eli Grossman, an associate in the securities litigation practice group, Dkt. Nos. 75 ¶ 3, 75-4; and (5) $790 for Makenzie Russo, a litigation associate, Dkt. Nos. 75 ¶ 3, 75-5.  The rates requested for each attorney is their standard hourly billing rate.

In determining a reasonable hourly rate, a court must take account "of all case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008).  "The reasonable hourly rate is the rate a paying

client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190. When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, the court may reduce the requested rate. *See, e.g.*, *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998); *Hong*, 2024 WL 1242507, at *3.

A reasonable hourly rate is one "in line with . . . prevailing [rates]" in the district where the court sits "for similar services by lawyers of reasonably comparable skill, expertise and reputation." *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *Hong*, 2024 WL 1242507, at *4. "[C]ourts generally look to the hourly rates employed in the District in comparable species of cases as a starting benchmark for the reasonable fee." *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 595 (S.D.N.Y. 2021).

In setting a reasonable hourly rate, the court should consider, *inter alia*, the "*Johnson* factors" enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Casmento v. Volmar Constr., Inc.*, 2022 WL 17666390, at *3 (S.D.N.Y. Dec. 14, 2022) (citation omitted). "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys'

fee award." *Id.* (quoting *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018)).

Moving Defendants' submitted rates are inflated given the type of work required in this case, the case's relative simplicity, and the risk assumed. Moving Defendants predicate their fee request on the expertise of their "award-winning litigation team" in "disposing of cases early[] and developing groundbreaking results." Dkt. No. 74 at 5. They also rely on the expertise of their lead counsel in "securities litigation, shareholder litigation, and financial services litigation," and that of its counsel and associates in "civil litigation matters" and "restructuring and bankruptcy litigation matters." *Id.* at 5–6. But this case did not require expertise in securities, shareholder or financial services litigation, and the result achieved was hardly "groundbreaking." The case involved run-of-the-mill claims of false arrest and conspiracy—particularly weak ones at that—a far cry from "the sophisticated, complex, and often expert-laden controversies for which leading firms charge corporate clients top dollar." *HomeAway.com*, 523 F. Supp. 3d at 596; *see also Macquarie México Real Est. Mgmt. S.A. de C.V. v. Hoiston Int'l Enters., Inc.*, 2021 WL 4952693, at *8 (S.D.N.Y. Oct. 1, 2021). The matter did not require the high-priced services of Moving Defendants in order to achieve a favorable result; it merely required knowledge of the basics of federal litigation and civil rights law. The presumptively reasonable rate in this case thus can be no more is the current rate in this district "for 'attorneys of comparable experience in civil rights litigation.'" *Jones v. Treubig*, 2022 WL 1223215, at *3 (S.D.N.Y. Apr. 26, 2022) (quoting *Tatum v. City of New York*, 2010 WL 334975, at *4 (S.D.N.Y. Jan. 28, 2010)); *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("The presumptively reasonable fee boils

down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." (internal quotation marks omitted)).[1]  Rates for experienced civil rights attorneys representing plaintiffs in this District "appear to cluster in the $350-450 per hour range." *HomeAway.com*, 523 F. Supp. 3d at 597 (quoting *Salama v. City of New York*, 2015 WL 4111873, at *3 (S.D.N.Y. July 8, 2015)); *see also S.W. on behalf of A.W. v. N.Y.C. Dep't of Educ.*, 2023 WL 5803415, at *10 (S.D.N.Y. Sept. 7, 2023) (reducing rate of hours of partner and associates at large, reputable law firm to between $315 and $450); *V.W. v. N.Y.C. Dep't of Educ.*, 2022 WL 19410318, at *6 (S.D.N.Y. Sept. 29, 2022), *report and recommendation adopted*, 2023 WL 2609358 (S.D.N.Y. Mar. 23, 2023) (noting range of hourly fees in civil rights cases, including by large law firms, in the range of $350 to $500).  In 2019, the Second Circuit concluded "that an hourly rate of $450 for a garden variety civil rights case in [this district] by an experienced attorney was reasonable." *Jones*, 2022 WL 1223215, at *3 (citing *Lilly*, 934 F.3d at 231).  There is no reason that

---

[1] The cases in this District where courts have awarded partners and counsel at large corporate firms hourly rates between $1,200 to $1,700 per hour generally have involved more complex civil litigation. *See, e.g.*, *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, 2021 WL 1353756 (S.D.N.Y. Apr. 12, 2021) (approving rates of $1,175 and $1,350 for partners at large law firm in bankruptcy action); *UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, 2021 WL 3292519, at *6 (S.D.N.Y. Aug. 2, 2021) (approving rates of up to $1,030 per hour for services rendered in connection with a complex bankruptcy and commercial litigation among sophisticated commercial actors); *Vista Outdoor Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (awarding fees of $1,170 to $1,260 for partners at major New York City law firm in complex contract action).  It is well established "that a reasonable rate for a routine task in a simple case may be quite different from a reasonable rate for a complex task in a challenging case, even when performed by the same firm or the same attorney."  *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *2 (S.D.N.Y. Apr. 20, 2021) (citing cases).  Indeed, in simpler cases, courts have awarded lower amounts to partners at large firms.  *See, e.g.*, *Wells Fargo Bank v. 5615 N. LLC*, 2023 WL 7394340, at *8 (S.D.N.Y. May 4, 2023) (awarding average hourly rate of $606.81 for partner work in foreclosure action).

the Moving Defendants, representing a defendant against notably weak claims in a case where counsel took no financial risk, should receive a higher fee than counsel for a civil rights plaintiff should receive.

Moving Defendants' arguments for higher rates are not convincing. They argue that their rates are comparable to those for specialized bankruptcy counsel, Dkt. No. 74 at 6, and have been approved by the bankruptcy courts, *id.* at 7 (citing Dkt. Nos. 75-13, 75-14). But the fees leading firms are able to command in bankruptcy matters from the most well-heeled clients bear no resemblance to the fees civil rights attorneys are able to command. And, as to the claim that Moving Defendants had to look to the bankruptcy rates because "they are the only readily-available billing rates from public sources," Dkt. No. 74 at 6, Moving Defendants need only have looked to find the rates for attorneys handling matters comparable to this matter, *see Charlestown Cap.*, 2021 WL 1549916, at *3; *Wells Fargo Tr. Co., N.A. v. Fast Colombia S.A.S.*, 2023 WL 8591953, at *7 (S.D.N.Y. Oct. 16, 2023). Moving Defendants also argue that it was reasonable for the O'Melveny firm to handle the matter itself "[g]iven the reputational risk" the firm faced. But leaving aside the implicit (and questionable) premise that an attorney with securities litigation experience would be more skilled at handling this matter than an experienced civil rights defense attorney, Moving Defendants would have the Court address the wrong question. In setting a reasonable rate, the question is not "the rate that the particular client 'desires' or is willing to pay," *A.G. v. N.Y.C. Dep't of Educ.*, 2021 WL 4896227, at *5 (S.D.N.Y. Oct. 19, 2021) (quoting *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015)); *see also HomeAway.com*, 523 F. Supp. 3d at 595 (citing cases), but rather "the 'hourly rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney.'" *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596–97 (S.D.N.Y. 2012). Indeed, as

the Second Circuit instructed in *Arbor Hill*, the court indulges the assumption that the reasonable

rate is the minimum that would need to be paid for the case to be litigated effectively, 522 F.3d

at 190; *see also Estrada v. Lagos Lounge Inc.*, 2023 WL 2748846, at *8 (S.D.N.Y. Apr. 3, 2023).

It is understandable that the firm would want to monitor the case closely and ensure it was

handled effectively—the same as any client (whether plaintiff or defendant) who faces

reputational risk from litigation.  Even assuming the firm faced reputational risk, such risk does

not justify awarding fees at a rate higher than awarded in any other case where reputation is at

risk.

    The other *Johnson* factors cut in favor of a reduction in fees as well.  This case did not

pose "complex or novel issues," *see Indep. Project, Inc. v. Ventresca Bros. Constr. Co., Inc.*, 397

F. Supp. 3d 482, 495 (S.D.N.Y. 2019), and Moving Defendants cannot suggest otherwise.

Indeed, the 1983 and 1985 claims could not be maintained—as all junior lawyers know—against

Moving Defendants simply by virtue of the fact that they are private entities rather than

government actors.  A "reasonable, paying" client simply would not have paid a premium for

representation on a like matter.  *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 364

(S.D.N.Y. 2018).

    Moving Defendants have not demonstrated that any of the attorneys involved had

experience in civil rights litigation.  Moreover, this is not a case where the reasonableness of the

rate can be supported by the fact that the client was willing to pay it.  There is no evidence that

O'Melveny or Sarnoff themselves bore costs at the rates suggested for the time of the attorneys

involved.  And the Moving Defendants themselves took on no risk by agreeing to handle this

case.  At the same time, the rate recognizes the fact that the case did require experience with

federal litigation, as to which counsel had extensive experience.  It also recognizes that had

O'Melveny and Sarnoff hired outside counsel to handle the matter, such counsel would have had to spend time familiarizing herself with the client and the facts that the Moving Defendants were able to avoid.  In that sense, the choice to handle the matter in-house was an economic one, while not at the rates that Moving Defendants seek to pass on to the Plaintiff.

The Court concludes that an hourly rate of $500 is the maximum reasonable rate for Mr. Sushon, the lead counsel and partner, an hourly rate of $350 is reasonable for Ms. Aronsson, the litigation counsel, and an hourly rate of $300 is appropriate for each of the three associates who worked on the case.  *See, e.g.*, *Barzilay v. City of New York*, 2023 WL 2917304, at *3 (S.D.N.Y. Apr. 12, 2023) (awarding $450 for partner; $300 for associate in civil rights case); *Rosario v. City of New York*, 2023 WL 2908655, at *6 (S.D.N.Y. Jan. 27, 2023) ("[P]recedent in this District suggests that a reasonable hourly rate for a civil rights attorney can range from $250 to $650, with rates clustering around $450 per hour for experienced attorneys in 'garden variety' civil rights cases."); *Jones v. City of New York*, 2021 WL 3773460, at *23 (S.D.N.Y. Aug. 24, 2021) (awarding between $250 and $550 hourly rates for barred attorneys in civil rights case); *HomeAway.com*, 523 F. Supp. 3d at 597–99 (awarding hourly rates of $650 for partner with extensive civil rights experience, $600 for partner with less experience in this area, $500 for counsel, $400 for senior associates, $375 for mid-level associate, $300 for junior associates and $150 for legal assistants in complex civil rights case); *Torres v. City of New York*, 2020 WL 6561599, at *4–5 (S.D.N.Y. June 3, 2020) (awarding hourly rates of $600 for partner, $400 for junior partner/counsel, $250 for junior associates and $100 for law clerks following settlement of "straightforward employment discrimination case"), *report and recommendation adopted*, 2020 WL 4883807 (S.D.N.Y. Aug. 20, 2020).

13

## II.    Number of Hours Expended

After determining the appropriate hourly rate, a court must also examine whether the number of hours billed was reasonable based on an objective reasonableness standard.  *See, e.g.*, *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 2023 WL 4422495, at *4 (S.D.N.Y. July 10, 2023).  The court "should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009).  "It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate."  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016).

Moving Defendants submitted billing records showing that their attorneys worked 177.5 hours in total.  Dkt. Nos. 75 ¶ 23, 104 ¶ 3.  They contend that, in a prior similar but less complex case involving only motions to dismiss and motions for sanctions, the court concluded that a total of 288.7 hours worked was reasonable.  Dkt. No. 102 at 1 (citing *An v. Despins*, 2024 WL 1157281, at *2 (S.D.N.Y. Mar. 18, 2024)).  Moving Defendants argue that their application for a mere 177.5 hours worked, in this case involving several claims in addition to a FARA claim much like the one asserted in *An*, is therefore reasonable.  *Id*.

The bulk of work performed by Moving Defendants' attorneys consisted of drafting motions, supplemental briefs, and replies to motions.  *See* Dkt. No. 104-1.  Although Moving Defendants' attorneys were successful in their motion to dismiss each of the counts against them, and in their motion for Rule 11 sanctions, Dkt. Nos. 57, 72, Moving Defendants' billing records reflect that attorneys spent nearly 100 hours of work on the twenty-two-page motion to dismiss the original complaint and their twenty-five-page motion to dismiss the amended complaint (which was nearly identical to the motion to dismiss the original complaint).  While the motions

were well-briefed, given the simplicity of the case,[2] and the minimal changes in the allegations between the original complaint and the amended complaint, this amount of time was unreasonable.  *See, e.g.*, *Merryman v. JPMorgan Chase Bank, N.A.*, 2019 WL 6245396, at *5 (S.D.N.Y. Nov. 22, 2019) (reducing hours where counsel's "work had presumably already been done during the [time] they allegedly spent drafting and defending the same complaint" filed in a different state); *see also Medina v. Buther*, 2019 WL 4370239, at *7 (S.D.N.Y. Sept. 12, 2019) (noting "diminishing returns" from further efforts on case).  Courts have found similar allocations of time to be excessive.  *See, e.g.*, *Capax Discovery, Inc. v. AEP RSD Inv., LLC*, 2023 WL 140528, at *7 n.2 (W.D.N.Y. Jan. 10, 2023) (finding over 83 hours of time drafting a motion to dismiss to be excessive); *Big R Food Warehouses v. Loc. 338 RWDSU*, 896 F. Supp. 292, 299 (E.D.N.Y. 1995) (31.5 hours for researching, drafting, and reviewing a fourteen-page summary judgment motion was "excessive"; 47.5 hours for drafting, researching and reviewing an eleven-page reply brief in further support of summary judgment was also "excessive").  For this reason, the Court reduces the hours that each attorney devoted to the motions to dismiss by twenty-five percent.  *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. East Ramapo Cent. Sch. Dist.*, 2020 WL 7706783, at *10 (S.D.N.Y. Dec. 29, 2020).

---

[2] Courts in this Circuit have hesitated to substantially reduce similar amounts of time billed only where the case was particularly challenging and posed complex questions.  *See, e.g.*, *Berney v. Edison*, 2010 WL 8497627, at *3–4 (E.D.N.Y. Jan. 29, 2010), *report and recommendation adopted*, 2012 WL 911821 (E.D.N.Y. Mar. 16, 2012) (holding that 141.31 hours spent on a motion to dismiss was reasonable after deducting fifteen percent from the total time spent of 166.25 hours and noting that, "[a]lthough the total amount of time spent related to the motion is substantial, the time spent reflects the difficulties in the case cause by the conduct of plaintiff's counsel"); *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F. Supp. 2d 323, 325–26 (S.D.N.Y. 2003) (noting that, while 123.75 hours spent on a Motion to Dismiss may appear to be "excessive on its face," adequately accounting for the "complexity of the issues in the case" warranted only a fifteen percent reduction of all hours, lowering the award amount related to the Motion to Dismiss to 105 hours).

The Court will award attorneys' fees to Moving Defendants in an amount equal to the hours worked, after reducing the hours by twenty-five percent for work done on the motions to dismiss the complaint and the amended complaint, multiplied by the hourly rates that the Court has deemed to be reasonable.

## III.    Costs

Moving Defendants seek to recover fifty percent of the costs incurred in litigating this action, for a total of $5,955.  Dkt. No. 104 ¶ 4.  These costs include charges for court fees, delivery services, copying and printing, local travel, meals, and online research.  Dkt. No. 75-25.  Courts will typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients."  *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987).  "A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead."  *Bd. of Trs. of Am. Fed'n of Musicians & Emps. Pension Fund v. Banos*, 2019 WL 2477316, at *7 (S.D.N.Y. May 24, 2019), *report and recommendation adopted*, 2019 WL 2473452 (S.D.N.Y. June 13, 2019) (quoting *LaBarbera v. Cent. Design Sys. Inc.*, 2006 WL 3422645, at *4 (E.D.N.Y. Nov. 28 2001)).  The costs incurred are reasonable and do not appear to include ordinary overhead costs.  As such, the Court will award Moving Defendants' application for costs in the total of $5,955.

## CONCLUSION

For the foregoing reasons, the motion is GRANTED IN PART and DENIED IN PART.  Moving Defendants are directed to submit to the Court within seven days of the date of this Memorandum and Order a revised declaration attaching an itemized billing statement with the hours worked for each lawyer, after applying the twenty-five percent reduction of hours worked

on the motions to dismiss and the hourly rates that the Court has determined to be reasonable, as well as a proposed Order.

      SO ORDERED.

Dated: April 15, 2024
     New York, New York

                                    LEWIS J. LIMAN
                             United States District Judge